Brief in response to post-conviction relief ruling

Page VIII — Detail Arguements

4) Judge Silverman surface touches the essential arguements brought up again and again by VanLier and seemingly side-tracks key issues by simply stating "that VanLier did not receive sub-standard representation" during trial, although some critical facts VanLier's trial attorney failed miserably to raise, such as: Why does the initial description of the suppose victim's assailant differ so drastically from the defendant? Can you honestly identify VanLier as your attacker especially after confessing to consuming a barcardi and coke, a captain morgan and coke, three shots of vodka, and several beers before encountering your allege attacker whom you met on a very dimly lit street? And why after being in close physical contact with the suppose attacker; and the police carefully gathering several articles of clothing from the suspect (VanLier) and the allege victim and the police retrieving hair fibers, blood samples, semen samples, fingerprints from both again and sent to the Washington D.C. laboratories for forensic analysis and D.N.A. comparison of which concluded VanLier had no contact with the victim and/or crime scene was he still made a suspect?

Brief in response to post-conviction relief ruling

Page IX — Detailed Arguements —

4b) Several other potentially sufficient problems should be quickly addressed such as: Why was VanLier initially charged with rape? when it was clearly apparent that no physical evidence ever supported such a claim. And more importantly, how did that horrendous charge of rape magically disappear and replaced with attempted rape without notice, judical process, or raising a red flag from VanLier's trial counsel?

VanLier repeatedly and adamantly ask his trial lawyer to present these and other arguements which only resulted his attorney to stern VanLier with warnings that "these lines of questioning would be viewed by the jury as badgering the witness" or "this might be construed as a form of haressment". This of course typifies VanLiers claim that he received highly ineffective assistance from his appointed counsel.

Judge Silverman has indeed been abundantly aware of these and other descrepancies surrounding this case for quite some time; however his choice of dealing with these issues is to ignore them in hopes they disappear (Refer to page 4, paragragh 3 of order)

Brief in response to post-conviction relief ruling

Page X    -    Detailed Arguements

5) Portions of Judge Silverman's comments on what made the defendant's identification believeable which was as he said was the combination of one so-called direct witness (the allege victim) and circumstantial (clothing) evidence of which by accounts exonerated Vanlier according to document proofs. If Judge Silverman's entire decision rest on these two elements alone it must be declared that his judgement has crossed the threshold of complete reasoning, especially after discerning the eye witness (allege victim's) state of mind before, during and after her ordeal and the approximately 90% of the evidence of which prove Vanlier's innocence. The other frivolous evidence has proven itself unreliable or at best inconclusive. (Refer to page 4, last paragraph of order).

6) Judge Silverman points out "that the victim was unable or unwilling to say that she was raped" although she was given an extensive pelvic exam and received sexual assault counseling

- continued on next page -

Brief in response to post - conviction
relief ruling

Page XI - Detailed Arguements -

66) Judge Silverman seem to further cloud
his own decision making by somehow
implying the allege victim was indeed raped
when the pelvic exam and subsequent
counseling proved the allege victim was
found to have had what she admitted to
as consensual sex of which it was also
discovered she had male genital hairs and
semen in and on her not belonging to the
accused VanLier who was again proven to
not to have any contact whatsoever.
Today, I wholeheartly contend Judge Silverman's
unfounded suspicion revolves around some
more deeper issues not related directly
with VanLier current conviction and facts.
Judge Silverman once again ignores that the
victim had consensual sex on the night in
question with a man other than VanLier.
Instead Judge Silverman goes on to point
out again that the victim's identification
of the defendant supported by circumstantial
evidence was enough which seems to be
his recurring theme overwhelmingly
disregarding the insurmountable evidence to
the contrary (Refer to page 7, paragraph 2).

Brief in response to post - conviction relief ruling

Page XII - Detailed Arguements

7) As to the highly suspicious circumstantial evidence Judge Silverman points out that the allege victim "claimed her assailant was wearing a t-shirt with a logo matching a t-shirt found in the Defendant's belongings where he was arrested.

First and foremost as mentioned by a police incident report, trial transcripts, and a statement made to paramedic personel from the accuser, she only mentioned that her supposed assailant wore a shirt (not t-shirt) which had the word Delaware on it. During a itemize search of VanLier's property there was never a t-shirt reported found. Further the accuser did'nt go on to describe the shirt by color, texture, or style or any other shape, form, or fashion and it should be stated that VanLier worked for a company at the time named Delaware moving and storage of which is clearly and boldly stenciled on the back and front pocket of a blue shirt. This company employed at the time of the supposed events of that reported late night at least 20 other individuals whom often frequent and lived in that area

Brief in response to post-conviction relief ruling

Page XIII  - Detailed Arguements -

7b) And as for a so-called distinctive hat (shown to be a fedora during trial) VanLier adamantly denied ever seeing or owning this particular item and there was no definative evidence proving that it ever belong to the accused. Although the hat, shirts, and various other clothing was subject to highly intense scrutized examination by a previously mentioned Washington D.C. D.N.A. and forensic laboratory of which concluded that VanLier had no link to any criminal activity of which is totally contrary to the state's unstantiated hypothesis, Judge Silverman obviously ignores the plain and simple for apparent guess work decisions in his final order. (Refer to page 7, last paragraph of order).

Brief in response to post-conviction relief ruling

Page XIV    — Detailed Arguements

8) Finally, Judge Silverman goes on to justify and concrete VanLier's conviction by pointing out that the "Defendant has a long, multi-state history of violent crimes, including a serious sex offense in Kentucky!"

First and foremost VanLier don't want to come close to ever justifying, rationalizing, or even more so minimizing his past behaviors which lead him to several unfortunate brushes with the legal system.

And in the true spirit of cosmic Karma which basically states "that whatever you sow, that shall you also reap" VanLier admits truthfully that he has sown some very bad seeds in his life; and if life really offers a boomerang effect based on those poor choices then VanLier's debt should be greater than the 27 years he is currently serving of which was delivered from the cosmos.

However, If Judge Silverman would have simply requested a more meticulous exploration of VanLier's past criminal records he would have discovered that all of VanLier's past charges (exception one) were of the very simple misdemeanor variety; public intoxication, disorderly conduct, trespassing, ect.

continued on next page.

Brief in response to post-conviction relief ruling

Page XV  - Detail Arguments

8b) The one felony charge of rape Vanlier was charged with in or about 1986 was quickly resolved to an amended misermeanor charge of the equivlent to 4th degree assault of which was plea bargained and only resulted in what Kentucky termed at the time, "walking probation". Vanlier has never been convicted of a felony upto this great travesty back on April 16, 2001 of which now Vanlier currently is serving a 27 year prison sentence for. Vanlier would like to take liberty to speculate that once the detectives considered Vanlier a suspect in this case (along with others) a criminal background was almost immediately ran, and it was discovered that he indeed has been charged with various offenses, including one sexual assault in Louisville, Kentucky around 1986. However the problems with having this background done is the fact that it's not complete and secondly it resulted in a sort of profiling of sexual perversion in the minds of the investigating detectives, prosecutors and now Judge Fred S. Silverman.

continued on next page

Brief in response to post-conviction relief ruling

Page XVI   - Detailed Arguements -

8c) Although all the evidence pointed another way and despite VanLier's claim of innocence the reality of cosmic Karma justice must exist. In the increasing world of media dramatization of the slimy existence of child molesters, pediphiles and rapist lurking about every corner and surfing the internet for prey to hopefully succumb to their twisted desires it has become openly apparent to the convicted VanLier that he has been caught up in an old fashion witch hunt, where the United States constitution carries no value and seemingly has no intrinsic merit and the evidence is contrary to the results. (Refer to pages 7 and 8 of final order).

9) Judge Silverman would in our opinion be better off declaring his obvious disdain for the accused, other then stating straight bold face lies in another apparent attempt to create support for his final decision. He said plainly that "VanLier denied guilt in the Kentucky case". A quick review of the sentencing transcripts would prove otherwise. And even if it was true VanLier did indeed plead guilty to a far less charge then the felony he was accused of in Kentucky. (Refer to page 8, 1st paragraph of order).

Brief in response to post-conviction
relief ruling

Page XVII - Closing Notes -

In the wickedness of sound discretionary
judgement and decision making processes
completed by Judge Silverman in which
he failed miserably to consider seriously
weighing in factors heavily favoring the now
appellant he simply overlooks, overshadows
and completely ignores his responsibility
to stand and defend Vanlier's merits
regarding the United States constitutional
amendment rights and other Delaware rules
and statutes he has sworn by.

From the pre-trial beginning of this case
when Judge Silverman was assigned to
somehow replace Judge Herily all the rules
of judical conduct have been essentially
thrown out the window. Vanlier first asked
that his rights to a speedy trial be recognized.
Forget it! Wait 30 months before trial!
Vanlier reminds the court of his totally
unhealthy living arrangements prior to trial
in living in a 8×10 jail cell with two other
individuals breathing cigarette smoke for all
of the 30 months with restriction of being
in the cell at durations of at least 18 hours
a day which is/was cruel and extremely
unusual punishment under the 8th U.S.C.A.
rights. Response. Stay where you are!

Brief in response to post-conviction relief ruling

Page XVIII    - Closing Notes -

Judge Silverman measureably comes close to creating his own form of justice by rendering a non-indepth search for the truth and profiling. His way of solidifying his final decision comes by way of twisting, turning and overall manipulating the simple words of truth to fit his criteria for making a decision. Although this phase of judgement falls tremendously short of a thorough investigation into the real issues surrounding this case the burden can not entirely fall squarely on the shoulders of the Judge. When indeed a great sum of the blame for such a travesty can and should be layed on VanLier's trial counsel whom proved to be highly ineffective by seemingly taking delibrate acts of not addressing certain pertinent aspects before and during trial.

Quite a few things not mentioned in this brief already, are worth discussion such as the fact that unsworn testimony was allowed to be heard by the jury without being reviewed by VanLier or him not having knowledge of it until he received the requested trial transcripts.

continued on next page

Brief in response to post-conviction
relief ruling

Page XIX  – Closing Notes –

VanLier's Attorney at trial consecutively
failed to refute or dispute a state's
witness perjured testimony from one
detective Roger who on the stand revealed
that "VanLier said he would confess to the
crime(s) if he could link any of the
evidence to him".
VanLier never said such a thing and was
willing to prove it via video and otherstate's
witnesses. VanLier's Attorney further allowed
the state's prize witness (the allege victim)
to almost totally recant her version
of the supposed events that occured
that night. Everything from the description
of the allege assailant to the highly
improbable and inconsistant way she detailed
the assault was far and away from her
initial accounts registered in a police
incident report and a paramedic medical
chart. VanLier's attempts to enlighten his
trial lawyer about these above problems
only resulted in one response. "The witnesses
statements becomes facts because they
said it", which once again typifies his
true ability or motives.

Brief in response to post-conviction relief ruling

Page XX    — Closing —

Other extenuating facts that are more than worth mentioning is that before trial:

1) VanLier was considered to be economically impoverished due to his financial state.

2) VanLier was considered by most accounts a transient with no permanent Delaware address.

3) Wilmington's District Attorney's office and Wilmington's public defenders office both faced a (42) 1983 lawsuit from VanLier for not recognizing ~~his~~ his right to a fast and speedy trial.

4) And finally VanLier is a black man and the allege victim is white.

VanLier has to raise these outstanding issues due to his inclination that there indeed could be racial, financial, and social profiling clouding even the most objective Judges' decisions.

# SUPERIOR COURT
# OF THE STATE OF DELAWARE

FRED S. SILVERMAN
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0669

STATE OF DELAWARE )
)
v. )    ID#: 9809006423
)
SHAWN VANLIER, )
)
Defendant. )

Submitted: November 18, 2004
Decided: February 10, 2005

## FINAL ORDER

*Upon Defendant's Motion for Postconviction Relief--DENIED*

In response to VanLier's January 2004 Motion for Postconviction

Relief, the court examined the case and issued a Preliminary Order dated March 22,

2004. The court denied the first parts of VanLier's motion, which concerned alleged

pre-trial and trial errors. The court, however, did not entirely decide VanLier's final

claim, concerning ineffective assistance of counsel. Instead, the court ordered

expansion of the record. Then, the case became procedurally complicated.

On April 21, 2004, VanLier's trial counsel filed the affidavit called for

by the Preliminary Order. Meanwhile, VanLier jumped the gun. He filed an appeal from the Preliminary Order. Having lost jurisdiction due to the interlocutory appeal, the court on May 20, 2004 issued a second order, staying this proceeding to await the Supreme Court's mandate. As mentioned below, VanLier also filed motions for sentence reduction while his interlocutory appeal was pending.

The Supreme Court dismissed VanLier's interlocutory appeal on June 8, 2004, and the mandate was filed here on June 24, 2004. VanLier then re-filed this motion on June 29, 2004. At that point, the court picked up where things were before the interlocutory appeal. On October 28, 2004, it issued its Third Interim Order, which met Superior Court Criminal Rule 61(g)(3)'s requirement that the State and VanLier have an opportunity to respond to trial counsel's affidavit called for by the Preliminary Order.

The Third Interim Order specified that the court was calling for a "response under Rule 61(g)(3) admitting or denying the affidavit's correctness." The quoted language parrots the Rule. The court also cautioned that "Rule 61 and this Order do not contemplate any response, other than the one mentioned here . . . ." The Order warned that the court would not consider a non-responsive submission.

2

By letter dated November 17, 2004, the State waived its response and rested on the record presented. VanLier, however, filed a fourteen page, handwritten response on November 29, 2004. VanLier flatly ignores Rule 61(g)(3) and the court's warning. Instead of simply admitting or denying the affidavit, he launches into a polemic, complete with old and new arguments, and string citations. Although VanLier's response is out of order, the court has tried to distill it in order to see how he agrees or disagrees with his trial counsel's affidavit.

## I.

In his affidavit, VanLier's trial counsel addresses the points contemplated by the expansion of the record: "the issues surrounding the photo identification procedures used by the police," and VanLier's "allegations that trial counsel forced VanLier to appear in prison clothing despite the fact that he had street clothes available."

### A. Photo Identification

As to the photo identification, trial counsel responded:

Trial counsel did note that a different procedure was used in each of the two arrays. Trial counsel determined independently of originally assigned counsel that no basis existed to move for suppression of the procedures used as unduly suggestive. Trial counsel did, however, cross-

3

examine the police officer who had conducted the arrays at great length concerning the different methods used and any increased potential for misidentification attendant to the different methodology employed in the one resulting in the defendant being identified as the perpetrator.

In fact, the record shows that Wilmington Police Detective, Robert Cunningham, testified on the afternoon of March 14, 2001. VanLier's trial counsel crossed-examined Detective Cunningham at length concerning the different methods used and the potential for misidentification. Counsel raised photo identification toward the middle of the cross-examination and he returned to the issue at the cross-examination's end.

In summary, VanLier's trial counsel identified the issue of the victim's identifying VanLier as her assailant, and through cross-examination he brought the issue to the jury's attention, twice. Assuming, without holding, that another lawyer would have pressed the issue harder, the court cannot find that VanLier's trial counsel's work was sub-standard.

Moreover, the court sees no prejudice to VanLier flowing from the out-of-court, photo identification procedure. What made the Defendant's identification believable was the combination of direct (eyewitness) and circumstantial (clothing, etc.) evidence, not merely the photo identification. Thus, it cannot be said that

4

VanLier has overcome the presumption of effectiveness by showing that trial counsel's efforts fell below a reasonable, objective standard and any sub-standard representation was prejudicial to him.

## B. Prison Clothing

As to VanLier's claim about appearing in prison clothing, the affidavit states that:

> Trial counsel's standard practice is now, and was at the time of trial in this matter, to facilitate defendant's use of clothing other than that issued by the Department of Correction, so long as the clothing is available, appropriate and does not provide a basis for an untoward inference against the defendant.

Trial counsel, however, has no specific recollection about whether VanLier had clothing available. Meanwhile, VanLier admittedly has no evidence to support his claim that he had street clothing available for trial. Moreover, an essential tenant of another aspect of his postconviction motion is the fact that he was indigent. Those things - VanLier's indigency, the lack of evidence supporting VanLier's claim and trial counsel's standard practice - lead to the conclusion that VanLier probably appeared in prison clothing because that was all that was available to him.

In his final response, VanLier says that his claim is "withdrawn." But he raises a new claim that it has come to his attention that the Public Defender provides "some clothing for those inmates who are labeled indigent and face very serious charges. . . ." That new claim comes too late and it is unsubstantiated.

VanLier's appearance at trial in prison clothing is an issue that should have been raised on direct appeal. In fact, as mentioned, while VanLier's appeal was pending he filed motions for sentence reduction on August 17, and October 5, 2001. When the court denied those motions on October 2 and November 26, 2001, respectively, it cautioned Defendant to bring his claims to the Supreme Court's attention. The question now is simply whether VanLier's trial counsel was ineffective for allowing Defendant to appear that way. VanLier has not demonstrated that the Public Defender provided clothing for clients like VanLier in 2001. To the contrary, trial counsel's affidavit implies that clothing was not available. The court will not order a second record expansion in 2005 to address a rumor that should have been raised at trial and on direct appeal in 2001-2002.

## II.

In closing, the court continues to acknowledge Defendant's insistence that he is innocent. The court appreciates that no one, except Defendant, knows for

6

sure whether he was the one. But the jury heard the evidence and it unanimously found Defendant guilty. In its Preliminary Order, the court mentions aspects of the case that were less favorable to the prosecution. Now, the court reminds Defendant why he was convicted and why his conviction is not a "travesty," as he claims.

The jury obviously was impressed by the way the direct and circumstantial evidence fit together. As mentioned, the victim showed many physical signs of being in a serious scuffle. She had scrapes and bruises, literally from head to toe. The victim was unable or unwilling to say she was raped, but a "S.A.N.E." nurse found "debris" and "dirt-like" particles during the victim's pelvic exam. Her personal effects, including cash, were found at the place she identified as the crime scene. Thus, the victim's claim that she had been abducted (forced down an embankment) and sexually assaulted was supported by strong circumstantial evidence.

The victim's identification of Defendant also was supported by circumstantial evidence. She claimed her assailant was wearing a t-shirt with a logo matching a shirt found in Defendant's belongings when he was arrested. She also claimed he was wearing a distinctive hat, with which he was identified. Finally, ( fedora ) although the jury never knew it, Defendant has a long, multi-state history of violent

7

crimes including a serious sex offense in Kentucky. That crime bears mention in

two ways. First, it is another interesting coincidence that the person the victim

identified here as her assailant, Defendant, has a history of violent crimes, including

a sex offense. Second, it is interesting that at sentencing here, Defendant denied

guilt in the Kentucky case. That was despite his having pleaded guilty there.

Defendant is entitled to protest his innocense for all time, but he goes too far when

he calls the conviction here a "travesty."

### III.

For the reasons presented in the Preliminary Order dated March 22,

2004 and the reasons discussed above, Defendant's Motion for Postconviction

Relief is *DENIED*.

**IT IS SO ORDERED.**

_____
                                Judge

oc:  Prothonotary (Criminal Division)
     Edmund Hillis, Esquire
     Donald Roberts, Deputy Attorney General
     Shawn VanLier, DCC

8

# Certificate of Service

I, _Shawn VanLier_, hereby certify that I have served a true
and correct cop(ies) of the attached: _Brief_

_____ upon the following

parties/person (s):

TO: _Donald Roberts_          TO: _____
_Deputy Attorney General_          _____
_Carvel State bld._          _____
_820 N. French St_          _____
_Wilmington, DE 19801_          _____


TO: _____          TO: _____

_____          _____

_____          _____

_____          _____

_____          _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE  19977.

On this _7th_ day of _April_____, 200 5
_Shawn VanLier_

Page 1

## Introduction

Due to the many flaws and inaccuracies of the previously filed brief in apellant's appeal by attorney Edmund M. Hillis and should we add without proper consultation with client, we now will provide you with a more detailed and error free fact of the reasons why my conviction should be overturned and how this travesty of justice should be reviewed. It should also be noted that Mr. Hillis <u>did</u> <u>not</u> provide VanLier with the very necessary transcripts, motion to withdrawl, copy of rule 26 (C) and, brief and appendix until (they were received by M.P.C.J.F. mailroom) Janurary 2, 2002 and than by the client the next day. Although Mr. Hillis had these very important documents readily available according to his letterhead dated Nov 13, 2001 which was withEld without cause or reason.

Page III                          Introduction

any points for the court's consideration, prior to the filing by counsel of said brief and motion." "The motion and the brief shall be served upon the state, and the state shall file within 20 days of service a response or make any application it deems appropriate."

It has been strongly suggested and now brought into evidence that apellant's appeal and subsequent brief and motion(s) was sent inappropriately on the same day VanLier's package parcel was sent to him. This again, typifies the sole incompetence and overall neglect that the apellant has thus far received from the public defenders office and it's attorneys. Today, VanLier prayerfully hopes that the court will now recognize and accept a more complete and detailed revision of apellant's central arguments so that his conviction can be appropriately overturned.

Page IV

Introduction

Mister VanLier has written respectfully requesting

that the public defenders office and apellant's

former attorney Edmund .M Hillis relinquish VanLier's

entire file to him because there is a question of

several unsworn statements submitted and further

admitted into trial and given to the jury that the

accused never had opportunity to review

Upon the presentation of grounds for post-conviction

relief there will be references used such as:

trial transcripts, various sheperdized cases that relate

to State V. VanLier, a medical record and, a police

incident report.

# Introduction

Due to the many flaws and inaccuracies of VanLier's previously submitted appeal by VanLier's former attorney's Edmund M. Hillis and Neil R Lapinski whom the latter of these men never had taken time or opportunity to meet the appellant and review or otherwise consider the defendant's overall views or even criticque VanLier's painstaking research of which is extremely essential in fully understand the full scope of injustice the accused and how convicted has indeed suffered throughout the course of these actions.

Today we respectfully request that this court finally recognize the full scope of the appellant's arguements. If it is in the courts will or power we humbly request that this motion be appointed an attorney outside the confines of the public defenders office.

( OVERVIEW )

Grounds used in this motion

for post-conviction relief rule(61)

✓1. Insufficient evidence (misidentification)

✓2. Ineffective assistance of counsel

✓3. Purjury

4. 4th U.S.C.A. Violations

5. Suggestive and vindictive testimony allowed

6. 6th U.S.C.A. (rights to a speedy trial) and (improper police procedures) violations

✓7. Judicial Errors

8. 5th and 14th (due process) U.S.C.A. Violations

9 Suggestive and leading recanted testimony allowed

✓10. Racism

11. Actual Innocence

Case 1:05-cv-00763-GMS    Document 3-2    Filed 11/02/2005    Page 28 of 28

Insufficient Counsel

1) The victim (Sandra Sanner)'s testimony about the offenses were extremely inconsistent with her statements to responding medical personel and police officers after the said offenses supposely occured. Miss Sanner's description of her assailant as being 5"1, 165lbs, and in his mid 20s (police incident report) was indeed far removed from the final suspect. She goes on to describe her attacker to medical personel as being at least 5ft. 10in. tall, 170lbs (Medical records). At the time of this supposed crime was committed the accused (VanLier) stood a handsomely 6ft 3in tall, at 155lbs, at 34 years of age as well documented by VanLier's Florida drivers licence at the time which should have been entered into evidence by the appelant's attorney (at the time Mr. Hillis) as support for his claim of misidentification.