Page VI

Insufficient Evidence
Misidentification

(1b) In Miss Sanners statements with medical personel and police officers there is no mention that her assailant displayed his penis or even attempted to remove his male genitalia which appellant's arguement strongly suggest that Miss Sanner was well rehearsed in mentioning this by prosecution because where there is an exposed virgina in this case, there has to be simply an exposed penis to establish the states arguement that there was indeed an attempt by Miss Sanner's attacker to violate her in a sexually perverse manner. There is both a medical record and a police report to prove exactly VanLier's arguement here (1st day 83:45)
(trial transcripts)

Page VII                     (misidentification)
                             (Insufficient Evidence)

(c) Miss Sanner's whole state of mind remains at

   question given the fact that she did report consuming

   three shots of vodka prior to this supposed

   incident to medical attending paramedic (Mr. Orkis)

   (ref. med. rec). (In the appellant's pocession)

In her testimony on the stand she further revealed that

she had indeed consumed additional more alcohol than

she first reported before she was alledgely attacked.

In testimony she revealed having "two beers and a

captain morgan and coke", "barcardi and more beer"

earlier before this suspose assault occured (A.27).
                                                      (Trial trans.)
It should be mentioned that Miss Sanner's purchase of

a cigar is highly questionable because it is widely known

that cigars are purchased by people primarily of her

age group (at the time 21) for the sole purpose of

extracting the tobacco from and re-rolling it with

marijuana which this court can recognize as being a

distorted view of the facts.

Page. VIII                    ( Misidentification )( Recant )
                               Insufficient evidence

ld) Miss Sanner first said that on her way to her

    destination, the store, the "light was normal street

    lighting" indicating that she could make out human

    being (A.26).

    Later Miss Sanner says in effect and fact "that the

    street was not lit and she considered taking

    another path home (A.27). (Trial trans)

(1E)  Misidentification (Inconsistent)

Miss Sanner reported being struck several times by her

assailant (according to her med. rec. about the face and body

by a closed fisted attacker, along with being choked

about the neck and than being drag down a railroad

embankment. She never clearly indicates what she was

hit with in her statements, however during her trial testi-

mony she dramatically demonstrated being physically

attacked by the use of her assailant's fist. Which again

was not consistent with Miss Sanner's injuries.

( 81-18-19 1st day ).

Page IX                    Misidentification (Inconsistent)

(1E) After careful examination of VanLier's rather large

hands and protruding knuckles which stick out like eagles

talons whenever he makes a fist and given the extreme

durablity and hardness, the appellant's arguement here

is that if VanLier struck Miss Sanner in the way

indicated on the stand or otherwise with a open hand

her injuries would be far more extensive than than

esteama, documented medical records and a very small
(abbrasions)

lasceration on her lip which were the primary extent

of miss Sanner's physical injuries. Appellant's full

contention is that Miss Sanners attacker must be of a

much shorten statue and obese individual because again

if the accused defendant whom now stands convicted had

engaged in this act, Miss Sanner's physical damages

would have been more severe (1st day 81:14-23)

Case 1:05-cv-00763-GMS    Document 3-3    Filed 11/02/2005    Page 5 of 35

Insufficient Evidence

Miss Sanner also said she hit her attacker with no clear-cut indication of where or with what she might have used to hit him with (1st day 82:1).

However upon the suspect (VanLier) being brought in for questioning he was immediately asked to remove his shirt so that he might be throughly examined by at least three separate detectives for what we now know as a possible sign of a recent struggle. The officers did'nt find a scratch no where consistent with testimony supplied by Miss Sanner which was two and half years after the facts (A29) and (2nd day 121:1-22) Many other details small and great proves beyond a shadow of a doubt Miss Sanner's total recant of the unfolding events of that late night/ early morning of September 7th or 8th, 1998. Today we offer a more quicker summarization

Page XI  * Points   Misidentification (Inconsistencies)

(1F) * Miss Sanner's overall tenacity to forget purchasing certain item at the store leaves a lot to question about her state of mind. (1st day 73:172) Trial trans.

* Whether or not her assailant physically penetrated her is one of the most outstanding concerns regarding her supposed attack which again reflects a somewhat difficult problem escertaining the full truth of the events of that night. (1st day 83:

*  13-14):

"Defendant asserts that the prosecuting witness' identification of him was made under circumstances which violated his constitutional rights under the Sixth and Fourteenth Amendments. He further asserts the illegal identification which may be made by the complainant.

The identification of the defendant in manner described must be suppressed. The United States Supreme Court has established guidelines for the conduct of pre-trial investigations and the

Page XII                         Purjury and Judical Error

2) Detective Kyle Roger purjures himself when he
testifies that the defendant said during questioning
"If you can tell me how you guys did this from a
hat, I will confess" (2nd day 100:16-19 Referring to
the defendant). There was also speculative and
suggestive testimony allowed by the Judge and
VanLier's attorney that was never refuted or
disputed even though Mr. VanLier made a verbal
protest throughout the trial proceedings. Testimony
such as a description of the crime scene "there was
also some scuffmarks and some movement of turf
there that appeared to be where a struggle may
have occured" (2nd day 10:1-3). Det. Roger was
further allowed to draw a mental and quite suggestive
picture by connecting the accused to this area when
in fact it was already established that this area was
used frequently by the community at large.

Page XIII        * Points        Perjury of interest

* It should also be noted that when the defendant was brought in for questioning he was constantly attended to by 3 or more detectives at all times So why than did not the other detectives callaborate Mr. Roger's admission to a confession by the suspect at the time? For they all gave testimony during trial.

* Also throughout the interview there was a cambra mounted in the corner where all these suspose questions took place. Vantier requested that his attorney to subpena the tape from this cambra however Detective Roger says that "it was not turned on" how convenient (2nd day 99:16) and some what inappropriate for this camebra not to be turned-on during what we see now as normal police procedures.

Page XIV          * Points of Interest    Perjury
                  (Unlawful Search and
                  Seizure)(4th U.S.C.H. Violations)
                  (Prejudice)

* There was a bias remark made in effect that

only homeless people seek employment at

the labor ready temporary service because

they can not hold down a steady job because

of their chemical dependancy or mental

incapacity to adapt to society (2nd day 97:16-20)

* Detective Roger's inventory of the defendant's

school bag came about without VanLiers

permission or him properly securing a search

warrant in a timely fashion if at all. This is a

clear-cut violation of the search and seizure

laws under the 4th U.S. cont. amend. rights.

Det. Rogers said he did secure a warrant, however

Mr. Roger failed miserably to present this warrant

to Mr. VanLier before √the search or during trial
                              or after
testimony (101:19^{2nd day}) and (2nd day 111:17-19)

Page XV                    * Points of interest    Perjury
                         Violation of 6th amend. Rights
                          (Improper procedures)

* Det. Roger's taking of the photographs without

properly advising VanLier of his rights to have

an attorney present during these photo shoots and

subsequently after they was presented to Miss

Sanner for identification. Here we have another

clear-cut violation of Vanlier's 6th U.S. cont.

amend. right due to the fact that the identifi-

cation was not made in a live line up at which

a defendant may be forced to act, speak, or

dress in a suggestive way, where the possibilities

for suggestions are multiplied, where the ability to

reconstruct the events is minimized and where the

effect of a positive identification is likely

permanent, but at a viewing of immobile photo-

graphs easily reconstructible, far less subject

to subtle suggestion and far less indelible in its

effect when the witness is later brought ...

Page XVI    * Points of interest    Perjury
              (Improper procedures)    Misidentification

... face to face with the accused, there is even less

reason to donominate the procedure a critical stage

at which counsel must be present, Reed V. Anderson

461 F.2d 739 (3rd Cir 1972). Accused has a sixth

amendment right to have counsel present at every

stage of the photographic identification conducted

after he is in custody (Reed V. Anderson 329 F. Supp

15). Det Roger further testified of finding a single

hair found in a hat possibly belonging to the

victim's attacker. This hair was indeed collected

and kept as evidence as to run D.N.A. comparisons

between Miss Sanner's assailant and hair samples

takenfrom the ~~accu~~ alledge pert petrator VanLier.

It should be said also that hair, blood and other

clothing and fluid samples were taken from Mr. VanLier ~~Bran~~

and Miss Sanner for DNA. analysis comparison and

immediately shipped to the FBI laboratory ...

Page XVII

**✱ Points of Interest** Misidentification

Improper Procedures Perjury + Misidentification
for DNA Comparisons    It was

in Washington D.C.

undoubtably concluded that Shawn VanLier was not

the contributor to any of the ✱samples left behind
*Matched*

on Miss Sanner's clothing apparel or otherwise

person and thus by eliminating the accused

VanLier of coming into contact with the victim or

crime scene (See: ~~F.B.I.~~ lab report). So Det Rogers

stating that he found a hair that exonerated VanLier

but was further used to suggest a connection between

mr. VanLier and Miss Sanner tainted Det Roger

~~testimony~~ with a facilitated lie by painting a false

picture as to what this evidence actually meant

(2nd day 13:15-19) Arrest warrant sworn out by

complaining witness, apparently based solely on

witness's illegal identification of defendant, was

defective, under fruit of poisonous tree theory, ...

Page XVIII

## Ineffective assistance of counsel
## Conflicts of interest

Trial counsel was blantantly ineffective in representing defendant's interests or upholding the constitutional rights of same. After essentially being ignored for over two and a half years by the Wilmington public defenders office and especially ~~The~~ Mr. Vanhier's initial attorney Mr. Raymond M. Radulski whom ~~Ⓟ~~ Vanhier further had dismissed after a year of non service, Vanhier was sucessful at having him removed from his case. However, the court found it once again appropriate to appoint another attorney to represent Vanhier's defense from the same office defendant is previous counsel came from (wilmington public defenders office which Vanhier expressed to the courts what he termed as conflict of interest due in part to a 42 US 1983 lawsuit filed against the public defenders office and past indiffrences

Page XVIII                    Ineffectve assistance of counsel

~~IX~~ Mr. VanLier was assigned to Mister Edmund Hillis about two weeks prior to his beginning his criminal case trial and again expressing his reluctance at being effectively represented by those with pending lawsuits against. Mr. Hillis met once with Mr. VanLier to possibly formulate a defense strategy in which Mr. Hillis said he found that the police did not have a shread of evidence to tie VanLier to the victim or crime scene and would further pursue a defense of misidentification against these horrendous charges VanLier now stands convicted. of Upon VanLier's request that several pre-trial motions be filed on his behalf such as.

Page XIX

Ineffective assistance of counsel
( Pre-trial motion )
...

(A1) Motion for speedy trial due to the amount of
time it was taking to process this case through the
system even after Vanhier tried to assert his rights to a
speedy trial by letter and pro'se motions for same.
This is of course a violation of Vanhier's 6th US
constitutional amendment rights and Delaware code
rule 48(b) which essentially garantees the same.
Vanhier's further contention is likened unto hughey's

Verus state, that defendant was even more denied
right to a speedy trial under the existing statues
(Hughey V. State 522 A.2d 335 and (Barker V. Wingo 407
US. 514, 92 S. Ct. 2182, 33 L Ed.2d 101) and Shockey V.
State 269 A.2d 788)
Again, Vanhier did indeed by mostly letter request
repeatedly and respectfully that he be given a firmly
established court date during the entire 2 1/2 years before trial

Page XX

Ineffective assistance of counsel
(Pretrial motion)

(B3) File motion for dismissal of case due to the four

Extreme factors in the U.S.C.A Amend. 6 ) (1)

the length of the delay (Again 2½ years)

(2) The reason for delays of which there was no

definitive cause or reason why Vanlier's case

was postponed four separate occasions and

after repeatedly subpoenaing witnesses

(There was an exception fifth delay granted

due to a murder trial Vanlier's attorney was on.

3) Prejudice to the defendent (Because Vanlier

was not able to secure proper counsel or

adorn the appropriate street clothing necessary

to obtain the objective view from a jury it made

Vanlier look more of the criminal element.)

4) And possible waiver by the defendant.

When the sixth amendment right to a speedy

trial is at stake, it may be ... realistic and

necessary to assume prejudice once the

accused shows that he was denied a rapid

prosecution. (See Barker V. Wingo 407 U.S. 514).

XXI

Defendant's argument
(Pre-trial motions)

File a <u>writ of habeas corpse</u> due to the fact that Vanhier have been unlawfully detained under the <u>VI</u> and <u>XIV</u> U.S. const. amend. which states that ✗ defenda have a right to a fast and speedy trial. The united States courts of appeals has further promulgated rules that established that the government must be ready for trial within six months of the date of arrest, or the charge will be dismissed. Although a speedy trial is a guaranteed the accused by the sixth amendment to the constitution most courts has dealt with that right on infrequent occasions: See Beavers V. Haubert, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1950); Pollard V. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed. 2d 393 (1957); United States V. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966); United States V. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed. 2d 468 (1971) See also United States vs. Provoo, 17 F.R.D. 183 (D. Md.), Klopfer v. North Carolina, 386 US 213, 87 S.Ct. 988, 18 L.Ed.

XXII                Writ of habeas Corpse

which established that the right to a speedy trial
is "fundamental" and is imposed by the Due Process
Clause of the Fourteenth Amendment on the states
A brief review of the overall scope of what
Exactly what the 6th U.S.C.A. involves reads as such:

1) General Consideration, 2) Speedy trial by Jury,

3) In district of crime, 4) Nature and Cause of
    Accusation, 5) Confront witnesses 6) Compulsory
    process, 7) Assistance of counsel.

Again defendant waited 30 months before trial while
also enduring four untimely continuances for no
cause or reason. VanLier further contends that there
was a delibrate attempt to delay trial in order to
hinder the defense efforts which should be weighed
heavily against the government in determining whether
defendant is right to speedy trial has been grossly
ignored and further denied no matter the repeated
request made by the defendant which were
numberous

XXIII

## Motion for bail reduction

This was to be filed due to the length of time the defendant was held (30 months) and the amount of the excessive bail the accused suffered throughout his 2½ year duration at an institution which was extremely overcrowded and subjected the defendant to an oppressive enviroment of having three individuals housed in closed cramp quarters of a 8×10 jail cell which was originally designed to accomendate one. Here we have a clear-cut violation of VanLier's' U.S.C.A. rights which guards against such cruel and unusual punishment. After asking repeatedly, one seriously flawed motion was finally submitted and could not even remotely be take with a objective view point. The flaws are as follows: 1) The defendant was not 44 years old at the time of this submission and subsequent review 2) Defendant was indeed employed before his arrest of which the one filed in mid 2000 said explicitly that the accused was not employed. 3) Mister VanLier finally did have an established residence within the city of Wilmington place of alledge crime, which was not stated in the

## Writ of Mandamus

Due to the fact that the superior court of New Castle county and VanLier's attorney at the time a Mister Raymond M. Raduski whom later the accused was finally sucessful of having him removed from the case chose not to acknowledge the defendant's request that previously mentioned motions be filed on his behalf, VanLier did indeed attempt to file these motions without the assistance of counsel and pro'se but was blocked because he was represented by so-called counsel

The primary object and purpose for the writ of mandamus at the time was/is to procure the enforcement of public duties (Bigg Vs. Corley 36 Del 135, 172 A.4) The writ of mandamus is a command in the name of state or sovereign, issued by a court of law having competent jurisdiction to an inferior or lower court. In essence and in truth defendant's only motive for filing this pro'se was to have the court to acknowledge, file, and hear, previous motions alread sent beforehand To end, no pre-trial motion was ever filed on VanLiers behalf (with exception to highly flawed motion for bail reduction.

XXV

Illegal Evidence & Procedures before trial

Procedures before trial

Overall The overall negligence on part of government and defendant's counsel (Edmund M Hillis) hampered the accused efforts to receive aduqate consideration when it came to Vanlier's due process press rights Photos were taken without regards to the U.S.C.A. VI which clearly states that "if the identification is not in a live line-up at which defendant may be forced to act, speak, or dress in a suggestive way, were the possibilities for suggestion are multiplied, where the ability to reconstruct the events is minimized and where the effect of a positive identification is likely to be permanent, but at a a viewing of immobile photographs easily reconstructible, and is far less subject to suble suggestion and far less indelible in its effect when the witness is brought face to face with the accused, ...

Illegal evidence gathering
and procedures before trial

XVI

here is less reason to denominate the procedure at
a very critical stage at which time counsel _must be_
present (Reed V. Anderson 461 F.2d 739). Therein was
mentioned during the accused trial a small insignificant
point made about this & however there never was
established strong presidence to further prove the
illegallity of this procedure at large by government
which is required by the U.S.C.A $\overline{VI}$ (Also see: 2nd day
99:1-22) (2nd day 122-125). Mr. Hillis did well to
question Det. Roger on how exactly how he presented
the photos in a Immobile line-up to the victim
however he was allowed to escape the critical part
of the presentation (which was to take extreme attention
to detail in identification of perp.), Det Roger was
allowed to only declare that "he was somewhat in
a hurry and that he did not indeed follow procedures
(2nd day 122:11-16), (3rd day 34:17).

XXVII

## Illegal Evidence gathering

Defendant's arguement here is that the sole basis of the warrant appears to be the illegal identification of the defendant. The warrant, therefore, is defective under the "fruit of poisonous tree" that would couple it with the primary taint that the photograph has been possibly presented to the victim in an unfashionable manner and out of the confines of normal procedures. Trial counsel's failure to suppress photographs of defendant that was illegally taken by police and used for identification purposes in a photographic array, constitutes ineffective assistance (Lofton Vs. Whitley 905 F.2d 885)

Trial counsel's failure to file suppression motion and perserve issue for review on appeal may constitute ineffective assistance of counsel and requires a remand (US Vs. Mato 905 F.2d 36).

XXVIII     ~~Illegal Evidence gathering~~

## Ineffective Counsel

The defendant requested for trial counsel to allow him to dress in his civilian clothes, which were available, his attorney utterly refused and he was forced to proceed to trial in prison clothing (Chalk VS. Beto 429 F.2d 225).

## Prejudice

Never before witnessed nor heard of any institution or government allowed to hold an accused to this duration without good cause or reason and without possible remedy to obeviate the discomfort of which he has suffered. ~~30 months incarceration~~ There is a further contention the defendant was singled out as an example to those whom may express resentment towards the status-quo which essentially says that we can and will do, perform, and act or not as we deem appropriate, no matter what laws, rules, or statues they have sworn to uphold. Unfortunately this is not a unique set of circumstances, however it does

XXIX                              Prejudice

Defendant suffered impermissible prejudice because
the alledge victim is white and he is black
This to the defense is not a highly opinionated point of
view because during the term of Mister Vanliers
incarcerated he has taken liberty to survey inmates
charged and convicted of charges in similartude to his
own has resulted in unequal treatment by the judicial
system which suffered the defendant. Although no
hostile racist arguements in statement can not be
openingly identified there is subversive testimony
which strongly implies racial overtures to a particular
group of people. Messages sent to the jury to paint a
derogatory mental picture is evident by such State-
ments made by Robert     whom declares that only
low life groups of homeless people frequent a ligtimate
bussiness which the defendant was employed at the
time (2nd day 97:16-23)

Prejudice

The overall tone and demeanor is widely reported as being extremely suggestive and did indeed create a negative view toward segments of groups from a particular society which can and will be interpreted as belonging to a certain race. There are other compounding factors which defense contribute him being convicted 1) defendant was considered a transient because he didn't reside in the area long before his alledge crime, nor did he ever have established residence of the same. He was labeled a transient 2) The defendant was further considered Indigent and had very little relible income before trial This point was drove home during prosecutions presentation to the jury to hopefully create disdain for the accused. 3) Defendant openingly challenged the judicals inaction by filing a law suit against the public defenders office and the districts attorneys

Judicial Error

## Redefining the law:

To interpret certain words such as it was with the words "liberty" and "restraint" as it relates to the charge of kidnapping in this case, should have been left to the juries common everyday understanding of these words. As is widely known our english language is forever changing and evolving; example to this is the word "gay" which of course meant in times past: joyous, lively, or merry back during yesteryear (webster 1951) Today of course this word is purely defined as being homosexual (Wedster's revised 2000) Perusing through several dictionaries (some old, some new) plainly gives diffrent meanings to the exact same words. To define any particular word out of an every day ordinary dictionary is to indeed redefine the law especially given to fact that no one usually knows the fullest intent of the legislatures thoughts when they enacted these laws using such words as "liberty" and restraint" sets dangerous presidence to the true meanin of the charge kidnapping.

## Judical Error

To quickly grasp the full understanding of defense's arguement here, it is necessary to clearly define the two words in question as defined by the publisher of Webster's dict. 1974) and (Websters dict. 2000) First the word "liberty" 1) freedom from slavery 2) A particular right, 3) freedom 4) An impertinent (Web. dict 1974). Liberty: Quality or state of being free, 2) action going beyond limits (web. dict. 2000). Restraint: 1) Act of restraining 2) Restraining force, 3) Control over feeling. Defense single point here is that everything and especially every word should be left entirely up to the Jaior's everyday understanding of these particular words. Such as it is with the word "love" which carries several diffrent meaning and various books, even the bible. To define a word from the context of the law and to further discern spiritual revelation as Judge Silverman did and said, did indeed re-define the law and is cause for this arguement.

TURN OVER

To quickly grasp the full understanding of defense's arguement here, it is necessary to clearly define the two words in question as defined by the publisher of Webster's dict. 1974) and (Websters dict. 2000) First the word "liberty" 1) freedom from slavery 2) A particular right, 3) freedom 4) An impertinent (Web. dict 1974). Liberty: Quality or state of being free, 2) action going beyond limits (web. dict. 2000). Restraint: 1) Act of restraining 2) Restraining force, 3) Control over feeling. Defense single point here is that everything and especially every word should be left entirely up to the Jaior's everyday understanding of these particular words. Such as it is with the word "love" which carries several diffrent meaning and various books, even the bible. To define a word from the context of the law and to further discern spiritual revelation as Judge Silverman did and said, did indeed re-define the law and is cause for this arguement.

TURN OVER

· XXXI'2

## Judical Error

Defense was not given the constitutional right to review all evidence levied agaist him and was never told that it even existed. The accused goes on to prove that now he has'nt had the opportunity to see these so-called "unsworn testimonies" We the partioner abhere to the right to face all the accusers towards and agaist the defendant and further review <u>all</u> evidence gathered towards and agaist the same (3rd day 71:19-23, 72:1-9)

## Warrants

Warrants was not secured ~~~~ in a orderly and decent fashion which made the search and the things confiscated during the search inadmissable because it was highly improper even though it yielded no crucial evidence agaist the defendant and now movant whom seeks a stronger voice to now push forward these fundamental arguements

7-1a (2-5-98)



# FEDERAL BUREAU OF INVESTIGATION
## WASHINGTON, D. C. 20535

### Report of Examination

Examiner Name: **Karen A. Lanning**

Unit: Trace Evidence Unit

Case ID #: 95A-HQ-1266899

Date: September 30, 1999

Phone No.: (202) 324-4353

Lab No.: 981020013 S IK KM

Results of Examinations:

A Negroid head hair exhibiting the same microscopic characteristics as the head hair sample from SHAWN VANLIER was found on specimen Q20. Accordingly, this hair is consistent with originating from SHAWN VANLIER.

It should be noted that hair comparisons are not a means of absolute personal identification.

Negroid hair fragments and body area hairs were found on specimens Q20, Q22 and Q23. These hairs are not suitable for meaningful comparison purposes.

No other Negroid hairs were found in or on the items submitted from the victim and the scene.

Caucasian head hairs were found on specimens Q25 and Q27. These hairs are microscopically dissimilar to the head hair sample from SANDRA SANNER.

Caucasian fringe head hairs, body area hairs and hair fragments were found on specimens Q25 through Q27. These hairs are not suitable for meaningful comparison purposes.

No other Caucasian hairs were found in or on the items submitted from the suspect.

No apparent textile fiber interchanges were detected between the items submitted from the victim and the scene and the items submitted from the suspect.

TEU - page 1 of 1

B2

This Report Is Furnished For Official Use Only

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE      )
                       )
       v.              )      ID Nº9809006423
                       )
Shawn H. Vanlier,         )
     Defendant.       )

## NOTICE OF MOTION

TO:      Raymond M. Radulski, Esq.
           Assistant Public Defender
           820 N. French Street, 3rd Floor
           Wilmington, Delaware 19801
           Attorney for Defendant

       PLEASE TAKE NOTICE that the within Motion *in Limine* will be presented to this

Honorable Court soon as counsel can be heard.

*Include F.B.I. report!* (handwritten)

Donald R. Roberts # 3536
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, Delaware 19801
(302) 577-8819

DATE:      June 27, 2000

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE     )
     )
     v.     )    ID Nº9809006423
     )
Shawn H. Vanlier,     )
    Defendant.     )

### MOTION *IN LIMINE*

COMES NOW the State of Delaware, by and through Deputy Attorney General Donald R. Roberts, and moves this Honorable Court to exclude certain evidence that the defense intends to introduce for the reasons that follow:

1. The defendant is charged with Attempted Rape 1st Degree, Kidnapping 1st Degree, Reckless Endangering 2nd Degree and Assault 3rd Degree.

2. During the police investigation of this crime, the suspect left a distinctive hat at the crime scene. During an investigative canvass this defendant was developed as a suspect when the police showed a witness a photograph of the hat which had been recovered at the scene.

3. Once this defendant was developed as a suspect, the victim was able to positively identify him during a photo line-up. *How was I identified as a suspect and how was the photo presented to the victim*

1

4.    The victim's sweater was sent to the F.B.I. Laboratory to see if any trace evidence could be developed. During the examination a small particle of hair, which was identified as a Negroid head hair, was found on the victim's sweater. By microscopic analysis the hair was determined to be consistent with known hairs taken from the defendant.

5.    The suspect hair fragment was then subjected to a mitochondrial DNA sequencing and compared to known head hairs from the defendant. The F.B.I. Laboratory concluded that Shawn Vanlier was exluded or eliminated as a contributor of the suspect hair fragment.

6.    The defense intends to introduce this evidence during trial.

7.    Mitochondrial DNA analysis is a relatively new form of DNA sequencing and has never before been deemed admissible by Delaware Courts. Indeed, only a small handful of other jurisdictions have deemed mitochondrial DNA typing as admissible.

8.    In order to be admissible, scientific evidence must meet the criteria set forth in Delaware Criminal Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), as has been adopted Delaware Supreme Court. *See* Nelson v. State, Del. Supr., 628 A.2d 69 (1993). In short, in order to find this type of evidence admissible at trial, the defense has the burden of establishing that mitochondrial DNA sequencing has been generally accepted in the scientific community and that generally accepted laboratory procedures were followed in the instant matter.

2

**WHEREFORE**, in the interests of justice the State requests this Court exclude the introduction of the mitochondrial DNA examination and/or schedule a Daubert/Nelson hearing prior to trial to determine the admissibility.

Donald R. Roberts # 3536
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, Delaware 19801
(302) 577-8819

DATE:    June 27, 2000