## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAWN HOSEA VANLIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-763-GMS |
| | ) | |
| THOMAS L. CARROLL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Shawn Hosea Vanlier. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondent.

## MEMORANDUM OPINION

Feb 20 , 2008
Wilmington, Delaware

**FILED**

FEB 2 0 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



Sleet Chief Judge

## I. INTRODUCTION

Petitioner Shawn Hosea Vanlier ("Vanlier") is an inmate at the Delaware Correctional

Center in Smyrna, Delaware. Vanlier filed the pending application for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.) For the reasons discussed, the court will

dismiss his petition.

## II. FACTUAL BACKGROUND[1]

Around 12:30 a.m. on September 9, 1998, a female ("SS") left her home to walk to a 7-11

convenience store to purchase some snacks and tobacco products. On her way to the store, a

male stranger greeted SS, saying "hey." SS responded by saying "hey," and continued on to the

store. After making her purchases, SS began walking back to her home along the same route she

took to reach the 7-11. SS encountered the same stranger near a train overpass, who again said

"hey" and asked the woman if she knew "Jose." SS responded that Jose might be out with his

girlfriend, but that she did not know the girlfriend's name. The conversation ended, and SS

slowed her pace so that the stranger would go on ahead of her because he was now walking in the

same direction as she. The stranger walked up to the steps of a nearby residence as if to go to the

doorbell, and SS walked past him.

As soon as SS passed the stranger, he stepped behind her and asked her if she had

boyfriend. SS responded that she did. The stranger asked if she "messed around." SS replied in

---

[1]The court's factual background is summarized from the Statement of Facts contained in
the State's Answering Brief in *Vanlier v. State*, No. 96,2005, dated May 11, 2005. *See* (D.I. 15)
The State's Statement of Facts is an accurate rendition of the facts as described in the trial
transcript.

1

the negative, and the stranger responded, "Well, you're going to mess around tonight." The stranger then grabbed SS around her neck with his arm so that she could not scream, dragged her down the embankment under a railroad bridge, and threw her to the ground. The stranger then began to pull SS by her legs along the ground under the bridge. He struck SS several times about the head to force her to release hand-holds that she managed to get on the ground. Once underneath the bridge, the stranger climbed on top of SS, choked her, and threatened to kill her. SS eventually went limp and submitted, removing one of her pant legs. The stranger then attempted vaginal intercourse, although SS was unsure whether he actually penetrated her or ejaculated. Once the stranger stopped, he stated, "Was that so bad? Now put your jeans on. You can go home."

After the stranger departed, SS ran up the embankment in her bare feet. She managed to flag down a passing ambulance by jumping in front of the vehicle. SS advised the paramedics that she had been sexually assaulted and they transported her to Christiana Care Hospital for treatment and examination. SS described her assailant as a black male, approximately 5'10", 165 lbs., who was wearing a blue shirt with the word "Delaware" printed on it. SS also stated that the assailant was wearing a brimmed hat, which the police later located under the bridge.

A Sexual Assault Nurse Examiner treated SS when she arrived at Christiana Care. The examination of SS revealed eyes that were red and swollen from crying, cuts to the corner and inside of her mouth, redness on the back of her neck and behind her right ear, scrapes to her left scapula, scratches to her flank area, scrapes and scratches to her left hand and arm, two broken finger nails on her right hand, scrapes to her right upper thigh, and numerous scrapes and scratches on her lower legs. The exam also revealed significant amounts of dirt and debris

2

around her labia, as well as soreness to her labia. SS's clothing had dirt and leaf stains, as well as rips and tears to the fabric.

The police presented SS with two photo arrays: the first array contained six photos, and the second array contained eight photos, one of which was of Vanlier. SS did not identify her attacker from the first array, but she immediately and unequivocally identified Vanlier as her assailant when presented with the second array.

Based on SS's description of her assailant, the police developed Vanlier as a suspect. After obtaining an arrest warrant and a search warrant, the police officers went to Vanlier's room at the Sunday Breakfast Mission in Wilmington to obtain some of Vanlier's personal items. The police found two shirts that read "Delaware Moving and Storage." While in Vanlier's presence, the police stated that they had found a hat linking him to the crime. Vanlier then said, "If you can tell me how you guys did this from a hat, I'll confess." (D.I. 15, App. to State's Ans. Br. in Vanlier v. State, No. 96,2005, at B-15.)

The police arrested Vanlier on September 9, 1998. *See State v. Vanlier*, 2004 WL 692633, at *1 (Del. Super. Ct. Mar. 22, 2004). On October 13, 1998, a New Castle County grand jury returned an indictment charging Vanlier with attempted first degree rape, first degree kidnaping, second degree reckless endangering, and third degree assault. Soon after Vanlier's arrest, the police sent hair samples and other evidence to a FBI forensic lab for testing. In September 1999, the State received an initial DNA report inculpating Vanlier. However, on November 15, 1999, the State received a final mitochondrial DNA report which excluded Vanlier as the source of any of the hair found on the evidence. The defense planned to use the DNA evidence to support its theory of mistaken identification. The State opposed the

3

introduction of the DNA evidence, and filed a motion *in limine* in June 2000. The parties

eventually entered a stipulation stating, "The evidence in this case was collected and preserved

and sent to the FBI laboratory. There is no forensic evidence that ties the defendant to the

crime." (D.I. 15, Appendix to Appellant's Op. Br. in *Vanlier v. State*, No.287,2001, at A-43.)

A three day jury trial commenced in the Delaware Superior Court in March 2001. SS

testified for the State, and described the details of her attack and her identification of Vanlier

from the photo arrays. Several police officers who investigated the rape scene also testified at

trial. Detective Rogers, the chief investigator, described his interviews with SS, the method for

collecting evidence, and his investigation of Vanlier as a suspect.

Other evidence introduced at trial established that Vanlier had been a regular employee of

a temporary employment agency called Labor Ready. Labor Ready's business records showed

that Vanlier had recently been assigned to work for Delaware Moving and Storage. Vanlier

routinely wore a fedora, and Labor Ready's bookkeeper unequivocally identified the fedora

found at the crime scene as the unique hat that Vanlier wore on a daily basis to work.

Vanlier did not testify, and the defense did not offer any other witnesses. The stipulation

regarding the lack of forensic evidence was read to the jury.

The jury convicted Vanlier of all charges, and the Superior Court sentenced Vanlier to a

total of 27 years incarceration followed by probation for the balance of his life. *See Vanlier v.*

*State*, 813 A.2d 1142 (Table), 2002 WL 31883016 (Del. 2002). On January 2, 2002, Vanlier's

defense counsel filed an opening appellate brief and appendix, and a motion to withdraw under

Delaware Supreme Court Rule 26(c). The State filed a motion to affirm on January 10, 2002.

The Delaware Supreme Court denied the State's motion and appointed new counsel for Vanlier.

4

Vanlier's new counsel filed an opening brief advancing two arguments: (1) Vanlier was denied his right to a speedy trial under the Sixth Amendment; and (2) the Superior Court judge should have dismissed the case *sua sponte* under Criminal Rule 48 due to the unreasonable delay in prosecution. *See generally Vanlier*, 2002 WL 31883016. The Delaware Supreme Court denied Vanlier's arguments as meritless and affirmed his conviction and sentence. *Id.*

Thereafter, acting *pro se*, Vanlier filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") alleging: (1) there was insufficient evidence to sustain his conviction; (2) the police committed errors during the investigation and a police officer committed perjury at trial; (3) the jury verdict was the result of prejudice against him due to his race, homelessness, and indigence; (4) the jury instructions were improper; (5) defense counsel provided ineffective assistance; and (6) the two and one-half year delay between his arrest and trial violated Vanlier's right to a speedy trial. In March, 2004, the Superior Court issued a preliminary order denying five of the six claims as procedurally defaulted and meritless, and also ordering an expansion of the record with respect to Vanlier's ineffective assistance of counsel claim. *State v. Vanlier*, 2004 WL 692633 (Del. Super. Ct. Mar. 22, 2004). Vanlier filed an interlocutory appeal, which the Delaware Supreme Court dismissed for lack of jurisdiction. *Vanlier v. State*, 850 A.2d 303 (Table), 2004 WL 1314831, at *1 (Del. June 8, 2004). On February 10, 2005, after reviewing trial counsel's Rule 61 affidavit, the Superior Court held that Vanlier's ineffective assistance of counsel claim was meritless, and denied the Rule 61 motion in its entirety. *State v. Vanlier*, ID# 9809006423, Final Order (Del. Feb. 10, 2005). Vanlier appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *Vanlier v. State*, 884 A.2d 512 (Table), 2005 WL 2254231 (Del. Sept. 16,

2005).

Vanlier filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(D.I. 2.) The State filed an answer arguing that the petition must be denied. (D.I. 13.) Vanlier's

petition is now ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted

7

but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

9

## IV. DISCUSSION

Vanlier asserts the following eight grounds for relief in his petition: (1) defense counsel provided ineffective assistance by failing to challenge perjured testimony, by failing to file pre-trial motions, by failing to file a state habeas petition, and by failing to argue that the State's "hard-core" evidence exonerated him of the charges; (2) there is insufficient evidence to support his conviction; (3) he was denied a speedy trial in violation of the Sixth Amendment; (4) the admission of perjured testimony violated his due process rights; (5) the Superior Court judge improperly instructed the jury on the kidnaping charge; (6) he is actually innocent of the crimes for which he was convicted; (7) judges, the prosecution, and defense counsel violated his due process rights by failing to acknowledge the speedy trial violation; and (8) his conviction for attempted first degree rape and third degree assault violate his right to be protected against double jeopardy. (D.I. 2.)

### A.  Claim one: ineffective assistance of counsel

Vanlier's ineffective assistance of counsel claim asserts four general complaints about counsel's performance. Two of those complaints are unexhausted because Vanlier never presented them to the Delaware state courts. The court will discuss the unexhausted and exhausted claims separately.

#### 1.  Unexhausted and procedurally defaulted allegations

Vanlier contends that counsel provided ineffective assistance by failing to file a state petition for habeas corpus, and by failing to argue during the trial that the "hard core" evidence obtained by the State exonerated him of the crimes. Vanlier did not present either of these allegations to the Delaware Supreme Court on post-conviction appeal. *See generally* (D.I. 15,

10

Appellant's Op. Br. in *Vanlier v. State*, No.9809006423).  At this point in time, any attempt by Vanlier to obtain further state court review of these issues via a new Rule 61 motion and subsequent post-conviction appeal would be foreclosed by Rule 61(i)(2) as repetitive.  *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453-54 (D. Del. 1998).  Hence, these two allegations are deemed exhausted but procedurally defaulted.

Vanlier does not assert any cause for his procedural default, and thus, the court does not need to address the issue of prejudice.  Additionally, because Vanlier does not provide any new reliable evidence[2] to support his general assertion of innocence, enforcing the procedural default rule will not result in a miscarriage of justice.  Accordingly, the court will deny as procedurally barred Vanlier's complaints regarding counsel's failure to file a state petition for habeas corpus and counsel's failure to argue that the "hard core"evidence exonerated Vanlier of the crime.

### 2. Adjudicated allegations

Vanlier  presented the remaining ineffective assistance of counsel allegations contained in claim one to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the allegations as meritless.  Consequently, Vanlier is not entitled to habeas relief unless the Delaware Supreme Court's decision is either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.

---

[2]Vanlier asserts that the November 15, 1999 report from the FBI lab excluded him as the perpetrator of the crime.  The stipulation stemming from the November 15, 1999 report regarding the lack of forensic evidence linking Vanlier to the crime was read to the jury during Vanlier's trial.  Therefore, the November 1999 report does not constitute new evidence of Vanlier's innocence.

668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court identified *Strickland* as the proper standard and analyzed Vanlier's allegations regarding counsel's performance within its framework. Therefore, the state supreme court's decision is not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). In determining whether the Delaware Supreme Court reasonably applied *Strickland* in denying the allegations, the court will review the adjudicated allegations in seriatim.

### a. Failure to file pre-trial motions

Vanlier contends that counsel provided ineffective assistance by failing to file a motion asserting a violation of his speedy trial rights. Vanlier raised this same claim in his Rule 61

12

motion, and the Superior Court denied the claim as meritless because the Delaware Supreme
Court had already determined during Vanlier's direct appeal that there was no speedy trial
violation. Vanlier challenged the Superior Court's decision in his post-conviction appeal, and
the Delaware Supreme Court affirmed the Superior Court's judgment, explicitly stating that
counsel did not did not commit an error that resulted in prejudice. *Vanlier*, 2005 WL 2254231,
at *2.

Generally, counsel does not provide ineffective assistance by failing to raise meritless
objections or arguments. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998). As
explained later in the text of the opinion, the two and one-half year delay did not violate
Vanlier's right to a speedy trial. *See infra* at pp. 15-28. Therefore, the Delaware Supreme Court
reasonably applied *Strickland* in holding that petitioner was not prejudiced by counsel's failure to
raise a meritless speedy trial objection.

Vanlier also asserts that counsel provided ineffective assistance by failing to file "several
other" pre-trial motions, but he does not describe the pre-trial motions he believes counsel should
have filed. In the absence of such identification, Vanlier cannot demonstrate that he was
prejudiced by counsel's alleged failure. Accordingly, the court will deny this claim.

Finally, Vanlier contends that counsel provided ineffective assistance by filing a deficient
motion for bail reduction. The Superior Court denied this claim as meritless, and the Delaware
Supreme Court affirmed that decision after determining that Vanlier failed to demonstrate
prejudice under *Strickland*.

Here, as in his state collateral proceeding, Vanlier has not demonstrated how the outcome
of his **trial** would have been different but for counsel's allegedly deficient motion for bail

13

reduction. Therefore, the court will deny the instant ineffective assistance of counsel claim for failing to satisfy § 2254(d)(1).

### b. Failure to refute perjured testimony

Liberally reading the petition in conjunction with his state court filings, Vanlier appears to believe that Detective Rogers' testimony regarding Vanlier's offer to confess and Rogers' description of the crime scene constituted perjury. Therefore, Vanlier argues that counsel performed ineffectively by failing to object to Detective Rogers' testimony as perjurious.

The record reveals that Vanlier presented his theory regarding Detective Rogers' perjury in his Rule 61 motion. The Superior Court denied the claim as unsubstantiated or conclusory because Vanlier did not offer any evidence to support that claim. On post-conviction appeal, Vanlier did not re-assert the substantive perjury claim; rather, he alleged that counsel provided ineffective assistance for failing to challenge Detective Rogers' statements as perjurious. The Delaware Supreme Court denied the ineffective assistance of counsel claim because Vanlier failed to demonstrate prejudice under *Strickland*.

In this proceeding, Vanlier does not explain the basis for his contention that Detective Rogers lied in describing the crime scene, nor does he contend that counsel had a reason to believe that Detective Roger's description of the crime scene constituted perjury. Additionally, although Vanlier asserts that he never offered to confess to the crime and that he could have proven that fact "via video and other state witnesses," (D.I. 3, at p. XIX) , the trial transcript indicates that no such video or tape exists. (D.I. 15, Appendix to State's Ans. Br. in *Vanlier v. State*, No.96,2005 at B-19) Considering the absence of any indication that counsel had, or should have had, a factual basis for believing that Detective Rogers committed perjury, the court

14

concludes that counsel did not perform deficiently by failing to object to Detective Rogers'

testimony as perjurious. Accordingly, the Delaware Supreme Court did not unreasonably apply

*Strickland* in denying the instant claim.

### B. Claim three: speedy trial

In claim three, Vanlier contends that the two and one-half year delay between his arrest

and trial violated his right to a speedy trial. Vanlier raised this claim on direct appeal, and the

Delaware Supreme Court denied the claim as meritless. Therefore, the court must determine if

the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of,

clearly established Supreme Court precedent.

The Sixth Amendment guarantees the right to a speedy trial. *See* U.S. Const. amend. VI.

The clearly established Supreme Court precedent governing speedy trial claims is set forth in

*Barker v. Wingo*, 407 U.S. 514, 530 (1972). According to *Barker*, courts must consider four

factors when determining if a defendant's speedy trial rights were violated: (1) the length of the

delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to

the defendant. *Id.* The Supreme Court has explained that "[t]he length of the delay is to some

extent a triggering mechanism. Until there is some delay which is presumptively prejudicial,

there is no necessity for inquiry into the other factors that go into the balance." *Id.* Delays of one

year or more trigger the analysis into the other *Barker* factors. *Doggett v. United States*, 505 U.S.

647, 652 n.1 (1992).

Vanlier was arrested on September 9, 1998. On September 30, 1998, the Wilmington

police sent evidence to the FBI for DNA and forensic testing. (D.I. 15, App. to Appellant's Op.

Br. in *Vanlier v. State*, No.287,2001, at A-46.) The FBI returned an initial report to the

15

Wilmington police on September 30, 1999, which stated:

> A Negroid head hair exhibiting the same microscopic characteristics as the head hair sample from SHAWN VANLIER was found on specimen Q20. **Accordingly, this hair is consistent with originating from SHAWN VANLIER.**

>     *       *       *       *       *       *       *       *

> Caucasian head hairs were found on specimens Q25 and Q27. These hairs are microscopically dissimilar to the head hair sample from SS.

(D.I. 15, App. to Appellant's Op. Br. in *Vanlier v. State*, No.287, 2001, at A-54.)(emphasis

added). However, on November 15, 1999, the FBI submitted a new "Report of Examination,"

which stated,

> A mitochondrial DNA (mtDNA) sequence was obtained from the K7.1 hair sample from SHAWN VANLIER and the Q20.1 hair from the sweater (positions 16033-16365 and 73-340). The mtDNA sequence obtained from specimens K7.1 and Q20.1 are different. **Therefore, SHAWN VANLIER can be eliminated as the source of the Q20.1 hair from the sweater**. No other mtDNA examinations were conducted.

*Id*. at A-55 (emphasis added). The matter was set for case review on January 18, 2000. On

March 6, 2000, the Superior Court considered discovery complete, and on April 6, 2000 the

Superior Court scheduled a trial date for August 22, 2000. In June 2000, the State filed a motion

*in limine,* requesting either a *Daubert* hearing on the admissibility of its own expert's testimony

regarding the mitochondrial DNA testing, or that the court exclude the mitochondrial DNA

evidence from trial. The State's motion *in limine* asserted that mitochondrial DNA was a

relatively new form of DNA sequencing, and that, in order for the results of the testing to be

admissible at trial, the defense had to demonstrate that mitochondrial DNA sequencing was

generally accepted in the scientific community and that generally accepted laboratory procedures

were followed in Vanlier's case. (D.I. 3, Motion *In Limine*).

Both the prosecution and defense requested a continuance after the State filed the motion *in limine*. The trial judge set a new trial date of March 13, 2001 in order to allow for a *Daubert* hearing to assess the validity of the DNA tests. The *Daubert* hearing never occurred, however, because the State and Vanlier's counsel agreed to a stipulation which stated that "The evidence in this case was collected and preserved and sent to the FBI laboratory. There is no forensic evidence that ties the defendant to the crime." (D.I. 15, Appendix to Appellant's Op. Br. in *Vanlier v. State*, No.287,2001, at A-43.) The stipulation was read to the jury during Vanlier's trial. *Id.*

On direct appeal, Vanlier argued that the two and one-half year delay between his arrest and trial violated his Sixth Amendment right to a speedy trial. The Delaware Supreme Court denied the claim after properly identifying *Barker* as the governing precedent and analyzing Vanlier's speedy trial claim within its framework. Therefore, the Delaware Supreme Court's decision to deny the speedy trial claim is not contrary to clearly established Supreme Court precedent. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must next determine if the Delaware Supreme Court unreasonably applied *Barker* in denying the instant claim. In *Barker*, the Supreme Court explained,

> [w]e regard none of the four factors identified above as neither a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must engage in the sensitive balancing process.

*Barker*, 407 U.S. at 533.

17

Even though the two and one-half year delay in Vanlier's case triggered the state court's

duty to consider all four *Barker* factors, the Delaware Supreme Court stated that "a discussion of

all four [*Barker*] factors is unnecessary because the record clearly shows that Vanlier suffered no

prejudice to his defense as a result of the delay." *Vanlier*, 2002 WL 31883016, at *2. The record

does not reveal if the Delaware Supreme Court confused the two prejudice steps and moved

directly to its consideration of the fourth *Barker* factor of actual prejudice, or if the state court

simply implicitly balanced the other factors and determined that the balance weighed in against

Vanlier. However, the Third Circuit has noted that, "once a defendant has been convicted it

would be the rarest of circumstances in which the right to a speedy trial could be infringed

without a showing of prejudice." *Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir. 1987).

Moreover, as explained below, a more detailed balancing of the *Barker* factors demonstrates that

Barker's speedy trial rights were not violated. Therefore, the court concludes that the Delaware

Supreme Court did not unreasonably apply *Barker* in denying Vanlier's speedy trial claim.

### 1. Factor one: length of delay

The two and one-half year time period between indictment and trial sufficiently triggers

the initial presumption that Vanlier was prejudiced by the delay. Thus, this factor weighs in

Vanlier's favor.

### 2. Factor two: reason for the delay

The Supreme Court has explained that the central inquiry with respect to factor two is

"whether the government or the criminal defendant is more to blame for the delay." *Doggett*,

505 U.S. at 651. Generally, deliberate attempts by the Government to hamper the defense by

causing a delay are weighed heavily against the Government. *Barker*, 407 U.S. at 531.

However, "more neutral reason[s] such as a negligence or overcrowded courts"[3] are weighed less

heavily against the Government, provided there is no "showing of bad faith or dilatory purpose

by the prosecution." *Government of the Virgin Islands v. Pemberton*, 813 F.2d 626, 628 (3d Cir.

1987). Delays attributable to the defendant are not weighed against the Government. *See Getz v.

Snyder*, 1999 WL 127247, at *10 (D. Del. Feb. 18, 1999)("delays related to the substitution of

defense counsel do no raise speedy trial concerns.").

### a. DNA testing period: November 23, 1998 - November 15, 1999

Vanlier was arrested on September 9, 1998, and a preliminary hearing was set for

September 15, 1998. The evidence was sent to the FBI lab for DNA testing on September 30,

1998, and Vanlier was arraigned on October 27, 1998. The initial case review occurred on

November 23, 1998, at which time the "the Superior Court assigned the case to the 'problem list'

as a result of the expectations of delay inherent in awaiting the completion of FBI laboratory

testing." *Vanlier*, 2002 WL 318883016, at *1. The State received an initial report from the FBI

in September 1999, and a final report from the FBI on November 15, 1999.

The State contends that the entire trial delay was due to the difficulties in obtaining the

results in the FBI DNA testing, and therefore, should not be weighed against either party.

However, after reviewing the record, the court concludes that only the delay during November

23, 1998 through November 15, 1999 can be attributed to the "difficulties" in obtaining results of

the  DNA testing.  Further, although the court has found limited support for the State's argument

---

[3] *Id.*

19

that DNA testing delays should not be weighed against the State,[4] the court does not agree that

the State should avoid all responsibility for the delay attributable to the DNA testing.

The court considers the following factors in reaching this conclusion. As Justice White

stated in his *Barker* concurring opinion:

> Unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply
> asserting that the public resources provided by the state's criminal justice system are
> limited and that each case must await its turn. . . . [T]his approach also subverts the
> state's own goals in seeking to enforce its criminal laws.

*Barker*, 407 U.S. at 538. The record in this case indicates that the State, not Vanlier, requested

the DNA testing to be performed, and also that the State chose to send the evidence to the FBI

lab. (D.I. 15, App. to Appellant's Br. in *Vanlier v. State*, No.287,2001, at A-51 to A-53.) The

record also indicates that the State knew about the potential for a long delay in receiving the

FBI's DNA test results,[5] yet the State did not request any continuances during the entire 12

month testing period to allow for the extended DNA testing time.[6]

Nevertheless, considering both the importance of DNA testing in criminal cases and the

---

[4]*See Crowe*, 1996 WL 659475, at ; *Jenkins v. State*, 947 So.2d 270, 277 (Miss. Sup. Ct. 2006); *Morehouse v. McLaughlin*, 1999 WL 813905, at 85 (D. N.H. May 28, 1999); *People of the Terr. of Guam v. Atoigue*, 1992 WL 245628, at *6 (D.Guam App. Div. Sept. 11, 1992).

[5]The court views the fact that the case was assigned to the "problem list" because of the delays inherent in DNA testing as demonstrating the State's knowledge of the backlog at the FBI lab. Additionally, the court has found two other Delaware cases litigated prior to Vanlier's case in which the FBI forensic lab took one year to complete DNA testing, which also underscores the State's pre-existing knowledge regarding the backlog at the FBI lab. *See In Re Crim. Action No. 94-08-1484, 94-08-1485 R1 NCC*, 1998 WL 454757, at *1(defendant charged in August 1994, and DNA test results obtained in August 1995); *State v. Crowe*, 1996 WL 659475 (defendant charged in August 1995, and DNA test results returned in September 1996).

[6]Although the designation of the case to the "problem list" may have excused the need to formally request a continuance, the court is unable to make a definitive determination in this respect given the State's failure to explain the relevance of a case's referral to the "problem list."

20

fact that DNA testing requires a certain amount of time, the court believes that the State should

not be held accountable for the "typical" amount of time needed to complete a mitochondrial

DNA test. Although the court has been unable to discern the "typical" or "average" turn-around

time in 1998 or 1999 for a DNA or mitochondrial DNA test,[7] the target turn-around time in 2007

for a complete DNA test by the FBI forensics lab is 2 months.[8] Jeffrey M. Perkel, The Scientist:

*DNA Labs Facing Huge Backlog* (May 21, 2007), http://the-scientis .com/news/53203/

Therefore, using 2 months as its benchmark for a reasonable length of time, the court concludes

that 10 months of the DNA testing period should be weighed against the State.

Having determined the amount of testing delay attributable to the State, the court must

next determine how heavily that delay should weigh against the State. *See Barker*, 407 U.S. at

531 ("different weights should be assigned to different reasons" for a speedy trial delay). Here,

the State sent the evidence out for DNA testing in a timely fashion, and nothing in the record

---

[7]As stated in a U.S. Department of Justice survey of DNA laboratories conducted in 2001,
Between 1997 and 2000 the workload for the Nation's DNA crime laboratories
increased substantially. During this period DNA labs recorded more than a 50%
increase in subject cases and convicted offender samples received. . . . The
increases in work received and analyzed between 1997 and 2000 resulted in
casework backlogs reported by DNA crime laboratories increasing by 135 %
while reported convicted offender backlogs decreased by 7%. . . . Eighty-one
percent of DNA laboratories reported having a backlog of known and unknown
subject cases, or a backlog of convicted offender samples, as of January 1, 2001.
. . . [In 2001], [t]he most common problem with the use of DNA evidence by
prosecutors' offices were excessive delay in getting laboratory results, reported by
70% of offices. . . . **At yearend 1998, 69% of labs reported having a backlog
totaling 6,800 subject cases and 287,000 convicted offender samples**. Bureau
of Justice Statistics, Office of Justice Program, U.S. Dept. Of Justice, Survey of
DNA Crime Laboratories, 2001,
http//:www.ojp.usdoj.gov/bjs/pub/ascii/sdnacl01.txt (emphasis added)

[8]However, the actual turn-around time is one-year, due to a backlog of cases in the lab.

21

indicates that the State sent the evidence to the FBI lab in order to deliberately hamper Vanlier's

case. In fact, although not addressed by the State, it appears that the evidence was sent to an out-

of-state lab because the State of Delaware did not have a crime lab capable of DNA testing in

1998.[9] *See State v. Crowe*, 1996 WL 659475, at *3, n.14 (Del. Super. Ct. Nov. 8,

1996)(explaining that, as of 1996, Delaware did not have a crime lab capable of performing DNA

testing). Moreover, Vanlier did not lodge any speedy trial objections during the entire DNA

testing period, indicating his acquiescence to the time needed to complete the DNA testing.

Thus, the court concludes that the 10 month delay weighs only slightly in Vanlier's favor.

### b. 7 month delay: November 15, 1999 through June 26, 2000

The next time-period for consideration is the 7 month period extending from November

15, 1999, the date on which the State obtained the final DNA report through June 26, 2000, the

date on which the State filed its motion *in limine*. The State does not provide any reason for

these 7 months of delay, but Vanlier also does not assert that the 7 month delay was due to any

bad faith or dilatory purpose on the part of the prosecution.

After reviewing the record, the court concludes that the delay was the normal incident of

the criminal process. *See, e.g., Doggett*, 505 U.S. at 656; *Wells v. Petsock*, 941 F.2d 253, 257-58

(3d Cir. 1991). For instance, after the State received the final DNA report, a State's witness

subpoena was issued on December 21, 1999, and the matter was set for case review on January

18, 2000. On March 6, 2000, the Superior Court filed a plea scheduling order stating that

---

[9]The court's research into the issue has also revealed that the State of Delaware did not
provide mitochondrial DNA testing until April 2007. Jay Lynch, Communications Director,
DHSS Press Release, *Medical Examiner Goes Online With Mitochondrial DNA Analysis* (April
25, 2007), http://www.dhss.delaware.gov/dhss/pressrelease/2007/dna-042507.html.

discovery was complete and setting a deadline of April 5, 2000. The final case review occurred on March 28, 2000, and on April 6, 2000 the Superior Court scheduled a trial date for August 22, 2000. On May 25, 2000, Vanlier filed his first letter with the Superior Court, complaining that his counsel had not followed his requests to inquire into the dismissal of the charges against him due to failure to timely prosecute. Vanlier also asked the Superior Court to dismiss the charges due to the denial of his speedy trial rights. The Superior Court judge immediately responded that he could not act on the *pro se* requests because Vanlier was represented by counsel. (D.I. 15, App. to Appellant's Op. Br. in *Vanlier v. State*, No. 287,2001, at A-57.) Vanlier filed another letter to the trial judge on June 8, 2000, asking the Superior Court judge to appoint new counsel. *Id.* at A-3. The judge responded on June 14, 2000 that the assignment of counsel is within the control of the Public Defender's Office. Vanlier filed a letter on June 23, 2000 raising speedy trial issues, and before the judge could respond for a third time, the State filed its motion *in limine* on June 27, 2000.

Nothing in this course of events indicates any attempt by the State to hamper Vanlier's case. Accordingly, the court will not weigh this 7 month period of delay against either party.

### c. 9 month delay: June 27, 2000 - March 13, 2001

Defense counsel intended to introduce the final DNA report as evidence during Vanlier's trial. Although not entirely clear, it appears that the State and defense counsel started discussing the reliability of the mitochondrial DNA testing sometime after the issuance of the final DNA report in November 1999. (D.I. 15, App. to Appellant's Op. Br. in *Vanlier v. State*, No. 287, 2001, at A-59.) The record indicates that the parties could not reach an agreement. (D.I. 15, App. to Appellant's Op. Br. in *Vanlier v. State*, No. 287, 2001, at A-65) Therefore, on June 27,

2000, the State filed a motion *in limine* to exclude the DNA evidence, or alternatively, request a *Daubert* hearing on the DNA results.

On July 6, 2000, the Superior Court judge sent a letter to defense counsel requesting the defendant's position on the introduction of DNA evidence and the scheduling of a *Daubert* hearing. Vanlier filed another *pro se* letter on July 11, 2000 raising speedy trial concerns. On July 12, 2000, the State and defense counsel filed a mutual request for a continuance of the trial date set for August 22, 2000, based in part on the difficulty of scheduling the *Daubert* hearing prior to the original August 2000 trial date; the prosecutor had a scheduled vacation during the end of July, and defense counsel was to begin his representation of another defendant in a capital murder trial that was expected to extend into the week of August 21, 2000. *See* (D.I. 15, State's Response to Appellant's Rule 26(c) Brief, at B-7; State's Appendix in *Vanlier v. State*, No. 287,2001, at B2.) Defense counsel also requested time to obtain and analyze the DNA materials and to obtain an expert to testify as to the DNA testing results at trial. *Id.* On July 17, 2000, defense counsel filed an independent letter advising that the defense did intend to introduce exculpatory DNA evidence obtained by the State, but that the State refused to stipulate to the accuracy of the DNA testing conducted by the FBI at the State's request. On July 21, 2000, the trial judge denied the mutual request for a continuance, but then, upon reconsideration, granted a continuance on July 25, 2000. On August 8, 2001, the Superior Court set March 13, 2001 as the new trial date. Defense counsel did not object to the new trial date.

The record suggests that the State's motion *in limine* prompted both parties to request a continuance of the trial. However, considering that the initial DNA report actually inculpated Vanlier and that the admissibility of mitochondrial DNA tests had not yet been addressed in the

24

State of Delaware,[10] the court does not perceive any bad faith in the State's refusal to stipulate as to the admissibility of the mitochondrial DNA test. Moreover, nothing in the record suggests that the State purposefully delayed filing the motion *in limine* in an attempt to hamper Vanlier's case. And, perhaps most important, both parties requested the continuance that resulted in the final trial date of March 13, 2001. Based on this record, the court concludes that the final 9 month delay (June 26, 2000 to March 2001) should not be weighed against either side.

In short, the court concludes that only 10 months out of the overall two and one-half year delay weighs against the State. In turn, viewing that delay in context with the totality of circumstances, the court concludes that 10 month delay weighs only slightly in Vanlier's favor.

### 3. Factor three: assertion of speedy trial rights

When the accused is represented by counsel during his criminal trial, *Barker*'s third factor regarding the accused's assertion of his speedy trial rights will only weigh heavily in favor of the accused if some formal motion regarding the speedy trial violation was made to the trial court. *Hakeem v. Beyer*, 990 F.2d 750, 765 (3d Cir. 1993). In this case, Vanlier's counsel never filed a motion raising speedy trial concerns. Nevertheless, the record reveals that Vanlier communicated his concern about the violation of his speedy trial rights to the Superior Court in several different letters filed on May 25, 2000, July 11, 2000, October 31, 2000, and November 13, 2000. On August 24, 2000, Vanlier filed a formal "motion to dismiss" raising speedy trial concerns, which the Superior Court refused to entertain because Vanlier was represented by counsel. The court notes that Vanlier filed this motion almost 2 years after his arrest, and that the

---

[10]*See, e.g., State v. Hammons*, 2002 WL 484645, at *2 (Del. Super.Ct. Mar. 28, 2002)(noting in March 2002 that "the issue of mtDNA evidence is an issue of first impression in Delaware.").

25

trial commenced within 7 months of the motion. *See generally* (D.I. 15, Super. Ct. Crim. Dkt.)

Therefore, the court will weigh this factor very slightly in Vanlier's favor. *See*, *e.g.*, *Hakeem*,

990 F.2d at 766.

### 4. Factor four: actual prejudice

*Barker*'s fourth factor of prejudice should be assessed in light of the following three

interests: (1) preventing oppressive pre-trial incarceration; (2) minimizing the anxiety and

concern of the accused; and (3) limiting the possibility that the defense will be impaired by

dimming memories and the loss of exculpatory evidence. *Barker,* 407 U.S. at 532. The most

serious form of prejudice is the impairment of the accused's defense. *Doggett v. United States*,

505 U.S. 647, 654 (1992).

On direct appeal, Vanlier argued that his defense was prejudiced by the delay because his

pre-trial incarceration was excessively oppressive and the defense did not have an opportunity to

pursue independent DNA testing after the first continuance. (D.I. 15, Appellant's Op. Br. dated

May 13, 2002 in *Vanlier v. State*, No.287,2001, at pp. 22-23.) The Delaware Supreme Court

denied Vanlier's claim of prejudice because: (1) Vanlier did not identify any specific harm

effected by the delay; (2) Vanlier failed to introduce evidence that his defense was impaired by

the delay; and (3) "Vanlier arguably benefitted from the delay because he obtained a favorable

stipulation that was as exculpatory as any expert testimony could have produced as a result of the

FBI DNA testing." *Vanlier*, 2002 WL 31883016, at *2.

As an initial matter, although Vanlier alleges that he suffered general stress and anxiety as

a result of the delay, he fails to demonstrate that those feelings "extended beyond that which 'is

inevitable in a criminal case.'" *Hakeem v. Beyer*, 990 F.2d 750, 762 (3d Cir. 1993). Therefore, it

26

was reasonable for the Delaware Supreme Court to conclude that Vanlier did not suffer prejudice as a result of "oppressive pretrial incarceration" or unnecessary "anxiety and concern." *Barker*, 407 U.S. at 532.

Further, although the court does not entirely agree with the Delaware Supreme Court's statement that Vanlier "arguably benefitted" from the delay, the Delaware Supreme Court did reasonably determine that Vanlier failed to demonstrate how the delay impaired his ability to prepare his case. Neither Vanlier's appellate brief nor his habeas petition identifies any witnesses that died or were lost as a result of the delay. Further, Vanlier does not demonstrate how his alleged inability to pursue independent DNA testing after the first continuance negatively affected his defense, especially because the stipulation rendered further testing or an expert unnecessary. Similarly, the court rejects as specious Vanlier's contention that the delay prevented him from obtaining proper counsel or securing appropriate street clothing because, presumably, the "extra" time would have assisted Vanlier in those two endeavors. (D.I. 3.) Accordingly, the court concludes that *Barker*'s fourth factor of prejudice does not weigh in Vanlier's favor.

### 5. Conclusion

To summarize, the court finds that the 10 month delay attributed to the difficulties in obtaining the DNA results should be weighed slightly against the State. However, as a whole, the State pursued Vanlier's case with reasonable diligence. Balancing that factor with Vanlier's failure to demonstrate prejudice, and viewing the Delaware Supreme Court's adjudication of the instant claim under the deferential standard provided by § 2254(d)(1), the court concludes that the Delaware Supreme Court did not unreasonably apply *Barker* in denying Vanlier's speedy trial

claim. Accordingly, the court will deny claim three.

### C. Claims two, four, five, six, and eight: procedurally barred

In claim five, Vanlier contends that the trial judge provided erroneous jury instructions, and in claim eight he argues that his rape conviction violates the double jeopardy clause. Vanlier raised claim five to the Superior Court in his Rule 61 motion, but he failed to present the claim to the Delaware Supreme Court on direct appeal or on post-conviction appeal. Vanlier did not present claim eight to the Delaware Supreme Court on direct appeal or on post-conviction appeal. At this point in time, any attempt by Vanlier to obtain further state court review of claim five would be foreclosed by Rule 61(i)(3) and (4) as procedurally defaulted and formerly adjudicated, and any attempt to obtain further state court review of claim eight would be foreclosed by 61(i)(2) and (3) as repetitive and procedurally defaulted. *See Kendall v. Attorney General of Delaware*, 2002 WL 531221, at *4-5(application of Rule 61(i)(3) and (4)); *Lawrie*, 9 F. Supp.2d at 453-54 (application of Rule 61(i)(2)). Consequently, claims five and eight are deemed exhausted but procedurally defaulted. Therefore, the court cannot review the merits of these two claims absent a showing of cause for, and prejudice resulting from, the procedural default, or that a miscarriage of justice will occur in the absence of such review.

In claims two, four, and six, Vanlier argues that he is entitled to habeas relief because there is insufficient evidence to sustain his conviction, a police officer committed perjury during his trial, and he is actually innocent. Vanlier presented these three claims to the Delaware Supreme Court on post-conviction appeal, but the state supreme court denied the claims as procedurally barred under Rule 61(i)(3) because Vanlier failed to raise them to the Delaware Supreme Court on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware

Supreme Court articulated a "plain statement" under *Harris v. Reea*, 489 U.S. 255, 263-4 (1989) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, as with claims five and eight, the court cannot review the merits of claims two, four, and six absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.[11]

Vanlier does not provide any cause for his procedural default of claims four, five, and six, but he does appear to assert ineffective assistance of counsel as cause for his procedural default of claim two (insufficient evidence) and claim eight (double jeopardy violation). Although an attorney's failure to preserve a claim for review in state court may constitute cause for the default in certain circumstances,[12] the record reveals that Vanlier never presented an ineffective assistance of counsel claim regarding insufficient evidence or a double jeopardy violation in his state collateral proceeding or in his subsequent post-conviction appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, and cannot excuse Vanlier's procedural default of claims two and eight. *See* Del. Super. Ct. Crim. Rule 61(i)(2); *Edwards* , 529 U.S. at 453-54.

---

[11]To the extent Vanlier asserts actual innocence rather than an insufficient evidence claim, the court notes that a freestanding claim of actual innocence is not cognizable on federal habeas review absent an independent constitutional violation. *See Herrera v. Collins*, 506 U.S. 390, 400, 404 (1993). Thus, the court also denies claim six because it fails to assert a proper basis for federal habeas relief.

[12]*See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

In the absence of cause, the court does not need to address the issue of prejudice.[13]

Further, although Vanlier contends he is actually innocent, the court cannot excuse Vanlier's

default under the miscarriage of justice doctrine because Vanlier does not provide any new

reliable evidence of his innocence.[14] Accordingly, the court will deny claims two, four, five, six,

and eight as procedurally barred.

## V. CERTIFICATE OF APPEALABILITY

The court must determine whether to issue a certificate of appealability. *See* Third

Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner

makes a "substantial showing of the denial of a constitutional right" by demonstrating "that

reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further,

when a federal court denies a habeas petition on procedural grounds without reaching the

underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find

it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right;

---

[13]The court notes, however, that Vanlier also cannot demonstrate prejudice stemming from his default of claim eight. Vanlier contends that his right to be protected against double jeopardy was violated because he was convicted of first degree rape and third degree assault, and third degree assault is a lesser included offense of first degree rape. The Double Jeopardy Clause protects against multiple prosecutions for the same offense. *Brown v Ohio*, 432 U.S. 161, 165 (1977). However, "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.* Section 773(b) of Title 11 of the Delaware Code Annotated authorizes multiple convictions and sentences for rape and assault. Therefore, Vanlier cannot demonstrate prejudice sufficient to excuse his procedural default of claim eight because there was no double jeopardy violation. *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

[14]Instead, Vanlier asserts that the November 1999 DNA report establishes his innocence.

30

and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Vanlier's petition does not warrant federal habeas relief.

Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Vanlier's petition for habeas relief pursuant to 28 U.S.C. § 2254 is

denied. An appropriate order shall issue.